Malikramram v. INS. Counsel, you dodged my question by saying you wanted to talk more about visa stamps. I'd like to bring you back to it. I can't figure out why a guy who's scared to go to Pakistan would go back there several times from Iran. Well, what he did, Your Honor, he And maybe you could also address the other five items that I asked you about. Yes. He testified, Your Honor, that he left Pakistan on August 13, 1990, just a week after the PPP government, the control of the federal government, was dissolved. He clearly at that point wasn't ready to make a complete break with his country. He didn't flee to someplace like the United States or Europe. He went to Iran nearby so that he could continue to maintain contact with his family. While he was in Iran for two and a half months, he made two to three visits to visit his family. He got to remember at the Why would he do that if he was scared to go to Pakistan? Why would he go to Pakistan if he's scared to go there? Because, Your Honor, at the time, you got to remember, this is a 20-year-old kid. As I said, he wasn't in a position to make a complete break with his country. He's 20 years old. All of his life, he'd lived with his family. He's in Iran all by himself. He doesn't speak the language. He made two to three brief visits to visit his family. That – and on this point, I want to be clear. He was never inconsistent on this point. He was completely forthright and consistent testifying that he went to Iran, and he made these two to three visits. The immigration judge simply found it not plausible that somebody who was afraid That doesn't seem plausible to me. To make two or three brief visits? It seems plausible to me. Everywhere where you've got foreign workers, there are all these places that sell phone cards cheap for calling home. And what I can imagine a 20-year-old doing – I've been 20 – is he'd call home and say, Mom, I'm so lonely here. I have to come home. I really have to see my old buddies and stuff, see the family. And she'd say, Don't come home. It's too dangerous. Don't come home. I'll put your father on. He'll tell you, Don't come home. And the kid would get the message, Don't come home. Yeah. Your Honor, maybe you are a stronger person than most of us. Most of us aren't that strong. I mean, even if we're afraid, we feel things. We have the desire to see our family. He just had celebrated his birthday all by himself in Iran. His sister was getting married. He wanted to come and see his sister get married. He thought he could make a brief visit. The fact that he did so doesn't mean he's lying. It means he doesn't have the strength, the fortitude that perhaps you do, but it doesn't suggest that he's lying. Well, you know, we don't get to decide this de novo. All we get to decide is whether there's substantial evidence in the record as a whole such that the BIA could legitimately reach the conclusion that it did. And why can't the BIA decide on the basis of that plus all these other things that we've discussed? Well, on this point, Your Honor, it's important to keep in mind, this is not an inconsistency at all. It's an issue about. It's not an inconsistency. It's another reason to think he's lying. It's an issue about plausibility. That's right. And the issue is, is it plausible for somebody who is afraid to go visit his family two or three times? Is it plausible? Of course it's plausible. There's no way that anybody, even no reasonable person could suggest it's implausible. You think no intellectually honest person could decide that it was implausible? I don't think so. It's not inherently implausible. It's not inherently implausible. If he had given. . . On whether that's inherently implausible that somebody who's afraid would go visit the family? No. I don't think a reasonable person could find that to be inherently implausible. No. If he had given inconsistent testimony on that point, that would be one thing. But he didn't. He was perfectly consistent. And the issue is, is it inherently implausible that somebody who had been arrested and beaten, had fled, would go visit his family two or three times briefly? No. It's not inherently plausible. No reasonable person could think that is inherently implausible. And the other issues raised by Judge Kleinfeld here, I just want to say the airport statement? No, Your Honor. He can't use that as a basis to reject Mr. Malik's testimony. The law in this circuit is absolutely clear. Akinmadi is right on point. The facts of this case are identical to the facts in that case. In Akinmadi, you had a Nigerian man posing as a Canadian citizen pretending to be a tourist. Same thing here. The Ninth Circuit said in that case it's not relevant to the credibility determination. And despite that fact, the immigration judge based his conclusion in this case on Mr. Malik's attempted entry some eight years earlier. Thank you, counsel. Counsel. Good morning, Your Honors. I'm Carol Federighi from the Justice Department representing John Ashcroft, Attorney General of the United States, in this matter. As Your Honors have pointed out, the issue in this case is whether substantial evidence supports the board's and the immigration judge's holding that Mr. Malik lacked credibility. The board, relying on the immigration judge, articulated, as counsel pointed out, a slew of specific cogent reasons for finding that Malik was not credible. I didn't mention this airport business in your brief. That's pretty ridiculous, isn't it? I don't know. As I would say, it's ridiculous, Your Honor. He said, oh, I meant it. I mean, he said one thing, and he said, oh, I meant the other. As we did point out in our brief, the two cities that he confused are 600 miles apart, and the two cities in Pakistan that are served by a lot of airlines. So he could have easily made a misspoke as to which one he left from. He could have easily misspoke. The immigration judge who was there at the hearing and was able to observe the alien's demeanor and tone concluded that that was another reason to – it sort of bolstered his finding that Mr. Malik was not credible. He did not base his finding solely on that one piece of testimony, but he – but he did find that bolstered his conclusion that Mr. Malik was not credible. He cited numerous other inconsistencies and implausibilities in the testimony, and he admitted in his opinion that some of them went to the heart of the asylum claim and others didn't. And some of the ones that counsel criticized are ones that the judge acknowledged did not go to the heart of the asylum claim but did bolster his feeling that the petitioner was not credible. Particularly telling in this case, though, is the way Mr. Malik responded when asked to explain the inconsistencies. He responded in a conclusory, evasive, and nonpersuasive manner. He variously blamed computer error or that he had nothing to do with his passport or visa or that maybe he had two passports or that 10 years had passed or that he wasn't really in Iran during the time. Where are you referring to in the excerpt? Well, I don't have all the page numbers. Let me see if I can find one. Don't bother rooting around for it. I thought you would just know. The computer error has to do with the date, some confusion about when President Zia was assassinated and how that – in relation to when his uncle was promoted to a local office. And that was on page 510 of the administrative record. And then on page 520 of the administrative record, when the judge was questioning him about his stay in Iran, he said, well, I wasn't actually in Iran. I was coming back and forth, coming to the north part of Pakistan and then going back to Iran. And that's on page 520 of the administrative record. So those are some of the instances where he was confronted with his inconsistencies and did not provide a persuasive explanation. As Your Honor has pointed out, there were numerous inconsistencies or implausibilities. And I just want to highlight the ones that go to first whether he truly feared persecution. As Your Honor has pointed out, he asserted he left Pakistan for Iran because he feared persecution. Yet he did return to Pakistan on three occasions. This indicates that his fear of persecution may not be compelling. It's a – if you want to call it an inconsistency in the underlying reasons for his actions or an implausibility. He explained that he did not respond to a subpoena for his testimony as a witness to one of his uncle's murders. But nevertheless, he said he and his family had been writing letters to the police asking them to investigate the murders. And so that, again, is an inconsistency in his claim of motivation for his actions. Relatedly, he says that several times he said the police didn't do anything about investigating his uncle's murders, but, in fact, there was some sort of investigation that led to the subpoena. He did not consider relocating within Pakistan, which the immigration judge found also was telling because the fears that he claimed that the problem was in Punjab, that the Muslim League had power in Punjab, even when the PPP party was in power elsewhere. He didn't ever consider relocating within Pakistan to avoid the persecution that he claimed to have feared. And about the country conditions, there's two issues going on here. One is the country conditions at the time that he was in Pakistan and was claimed he was being persecuted. What the immigration judge was looking at was the country conditions at the time of the immigration judge's decision. And those indicated that PPP members were not being persecuted. They had found since the 1997 election that there had been no evidence of reprisals after that election. So this doesn't go to credibility. It goes to the prospect of future persecution. Well, it goes to the credibility of his claim that he feared persecution if he returned to Pakistan. There was no evidence in the record that at the time of the hearing, PPP members were being targeted for persecution, and, therefore, his claim that he feared some sort of persecution if he returned lacked credibility. Now, he didn't just produce any corroboration of a number of these things. Under what circumstances would he be required to do that? Well, as counsel pointed out, corroboration is not always required. It's not required. An alien can testify, can provide credible testimony that's sufficient to support his claim to asylum. In this case, the immigration judge found that the testimony that Mr. Malik was not and he found the lack of corroborating evidence was further troublesome. If there had been some corroboration on some of the claims, then he would have been inclined to believe them. So in this case, the lack of corroborating evidence does support the immigration judge's holding. For example, he didn't provide any evidence that he was a member of the PPP, or he actually didn't claim to be a member of the PPP itself. He was a member of a student wing of that party. He never provided any evidence of that. And he has, as Your Honors pointed out earlier, his attempts to obtain other corroborating evidence were very weak or nonexistent. He claimed to have had newspaper articles and investigative reports at one time and had lost those, or some had been burned in a fire, allegedly. But he made no attempt or no credible attempt to reobtain those, which makes one question whether they actually exist or would support his claim. As to the time he spent in Dubai and the concerns about the passport and so forth, the counsel just gave us a long story about how he only had a visa for 25 days in Dubai and that he overstayed that visa, and that may be why they changed the dates on his passport. That's, as far as I know, that's not in the record. That's new. That's not even evidence. It's just a counsel statement here. At the time of the hearing, as I said, Petitioner or Mr. Malik did not provide a credible explanation for why the stamps on his passport didn't match his story. He merely just said, I don't know. I gave my passport to the agent, and then it was given back to me, and I don't know how it got all these stamps on it. That's just sort of dodging the question, and the immigration judge found that it wasn't a very credible explanation. It also does not explain there was a stamp on his passport from Pakistan for when he changed money in Pakistan on December 23rd. That's in the record. And there's no that his story, counsel's story about the visa overstay doesn't account for that stamp. PPP is Benazir Bhutto's party, is that right? Correct, correct. The former prime minister? Yes. And just to sort of, I'm not going to go into Pakistan history, but the PPP has been in and out of power sort of on two- or three-year intervals, and when they're not in power, they've been one of the principal opposition parties. Just to sum up, Your Honors, the standard in this case is a very deferential one to the board's finding. As long as there's substantial evidence to support the board, which in this case relied heavily on the immigration judge's findings, then the decision should be upheld. The board, as I said, relied on the immigration judge's findings, and there's substantial deference given to those findings. The immigration judge was in the best position to observe Mr. Malik, to observe his tone and demeanor. He had a chance to question him and to ask for explanations about a lot of these inconsistencies and found them not persuasive. Therefore, special deference should be given to the immigration judge's findings. In this case, we ask that the findings of the immigration judge and the board's decision be upheld because no reasonable adjudicator would be compelled to find that Petitioner was credible. Thank you. Roberts. Thank you, counsel. Malik Mimram v. Ashcroft is submitted. Next, we'll hear Ahmad v. INS. Thank you.
judges: Cudahy , Kleinfeld,jones